Thank you. Good morning, Your Honors. And may it please the Court, my name is Caroline Platt, here on behalf of Emanuel Estrella. I would like to reserve two minutes for rebuttal, and I will try to watch the clock. We would respectfully ask this Court to reverse the District Court's denial of Mr. Estrella's motion to suppress the gun. This case falls under Knowles v. Iowa, because in this case, there was no actual arrest for the bicycle-riding violation. And there is no such thing as a search incident to citation, which was the unanimous holding of the Supreme Court in Knowles v. Iowa. Put another way, there is no search incident to an arrest without an actual arrest. So how is there not an arrest when an officer points a gun at somebody and tells them to stop? That's correct, Your Honor. There are many cases of this Court that hold that, such as Miles and Washington v. Lambert pointed out at length that all of the factors that go to Terry stops versus arrests, none of them are dispositive, including officers pulling their weapons. So your contention is that your client was not arrested? Not prior to the officers locating the gun. That is correct. Did the District Court make any finding as to when he was arrested? The District Court explicitly declined to make a finding, Your Honor. And that's at page 6 of the ER. And I would point the Court also to the police officers, both officers' declarations. That would be at page 87 for one officer and page 90 for the other officer, both of which state that the arrest that did take place was for the gun. And so the United States has the burden always to prove a warrantless exception applies. And here, the evidence the United States submitted shows that the arrest that did happen was for the gun. And so I think they have not met their burden to show that there was an arrest for the bike riding violation. That makes this case fall under Knowles and not under Moore. And Moore was an 8-1-0 case, and Knowles was a unanimous case. And in Moore, the way that the Court distinguished Knowles was by the existence of an actual arrest. So I think the two cases actually are not hard to, you know, put together. The only question is, when was the arrest and what was it for? And those two questions, you know, are also Congress, right? You just figure out what the arrest was for, and then you know when it happened. What do we do with Smith and Johnson? So I think Smith and Johnson, you know, obviously also go together, Your Honor. And Johnson there, because there was probable cause, and the Court in Johnson says, there was probable cause for marijuana trafficking based on what the officer saw in the glove compartment before the officer even asked the driver to step out of the car. And I understand there's a, I think it's MIMS, the case that says you can always make a driver get out of the car. You know, so the officer there, because it's a traffic stop, not a, you know, pedestrian bike riding stop, there was probable cause for a felony drug violation before anything else happened. So that gets you to the contemporaneous part of a search incident to arrest. And there, that also gets to the Court's reasoning in Macebeo, which is about not presuming that state law officers will violate the law with a state law illegal arrest. So Moore says if they do make an illegal arrest, okay, fine, it doesn't implicate the Fourth Amendment. But that's different than presuming they will do so in the absence of the actual arrest. So that would be how you deal with U.S. or Virginia versus Moore? Correct. If they had made the actual bike riding arrest here, we would concede, okay, that's Moore. But here there is no actual bike riding arrest. That's why it's a Knowles case, because Knowles and Moore are not in conflict. And the Court and Moore, again, these were both basically unanimous decisions. And Moore said, okay, this isn't Knowles because here we have an actual traffic arrest. And in Knowles there was no actual arrest, even though there was probable cause for a custodial arrest at the time of that traffic violation. The only thing is did they make an actual arrest or not without regard to state law. And the reason you think they didn't make an actual arrest is because they said they arrested this person later after finding the gun. That's one of two reasons, Your Honor. The other reason is? If you look at page 86 of the same declaration of Officer Smith, he actually told Mr. Estrella he wasn't under arrest before he searched him. And I understand it's an objective standard. So in order to get there, don't I have to say that a reasonable person would feel free to leave if an officer has pointed a gun at him and told him to stop? Well, not quite, Your Honor, if I may clarify. Because the Terry stop standard and the arrest standard are both free to leave, I think somebody could feel that they were being Terry stopped and not free to leave while not necessarily being under arrest. Hold on, hold on. Can you back up and just slow down? Because this is it for me. This is the pressure point. So I think it's uncontested that the officer pointed a gun at this individual and told him to stop. And I think he told him to sit down.  Had the gun been reholstered? There's video, Your Honor, that was part of the record of the district court. I'd be happy to submit a supplemental excerpt of record this afternoon if you would like me to. I entered this case the day the reply brief was due. Does this mean you don't know? No, I do know the answer, yes. Well, then why don't you give me the answer, please? There are two officers. I believe Officer Smith's gun had certainly been reholstered. The other gun might have been in a low ready and might have been reholstered at that exact moment. They're not necessarily both visible on the same video. You don't know. But both guns were certainly reholstered very quickly. Counsel, that's not answering my question. Officer Smith's gun was holstered. So if I could just finish. Yes. If you don't know, tell me you don't know. But you haven't answered my question yet, and it's a pretty specific question. So can you help me out? We can go look at the video. But if you know, it would be helpful. It is my understanding that both guns were holstered certainly at the time they found the gun. Certainly before they found the gun? Yes. Now, at the moment he said, sit on the curb, I mean, these are a few seconds apart. I'm not sure. But when they searched my client's person, both of their guns were holstered. Thank you. So back to the free-to-leave question. Because the Terry standard and the arrest standard are both free-to-leave from the perspective of a reasonable detainee, I think my understanding in this case is that I would say my client or a reasonable person in my client's position would not have felt free to leave. But he's sitting on the sidewalk having just been told to sit on the sidewalk by two officers in uniform? Yes. Okay. And yet there's no arrest because? Because he was told he was not under arrest. And so it doesn't matter? Okay. Yes. He's told he's not under arrest. And I think you're – and from that you're assuming that he did feel free to leave? No. You just said he wouldn't have felt free. Because the officer told him it was not an arrest, so I think he would have assumed. Are you still conceding that we go by the subjective impressions of the person, the arrestee? Objective. I misspoke. Is that still where we're at? Of course, yeah. Well, when you say of course, it seems to be the – in fact, when you apply that rule, it seems to me like you slip away. So I think a reasonable person in my client's position would feel he was being, you know, stop-and-frisked on the street. Detained starting when? From the minute the police officers spoke to him. Told him to stop. Yeah. Pointed a gun at him, right? And then from that point on, he was never free to leave. Correct. Okay. But because free to leave is the Terry stop standard and the arrest standard, I think it was a Terry stop until they put him in the police car. I understand. Okay. So it was a Terry stop. But it was an illegal Terry stop as the district court found. Well, how do we get – well, the district court said it was a legal Terry stop if he had resolved the riding-on-the-bike factual dispute differently. I don't see a ruling in the district court saying this was a Terry stop – this was an illegal Terry stop even if he had resolved the factual dispute about whether or not he was riding the bike in favor of the police. So how I read that, Your Honor, is that this was a legal bike citation stop under the district court's bike-riding finding, which we submit cannot be clear error. I think either way the court had found the bike-riding dispute would not be clear error, right? And so it was a legal bike-riding citation stop under the district court's finding that otherwise – but the court found there was no reason to frisk him because there was no armed and dangerous reasonable suspicion, and that is a finding of the district court. There was nothing to stop him for other than the bike-riding violation. And so then – and that's, I think, a reading of page 11 of the ER. And then everything else happened, and it escalated from there. So the government has waived everything about their Terry argument on page 6 of the government brief, and from there everything escalated and everything else happened with the search and the gun and the drug paraphernalia that they found on my client. After that, it turns into the search incident to arrest argument. I've got one point that I want to leave you with so you can think about it before you come back. The part that I think you need to grapple with for me is from 177 of Virginia v. Moore. It's this quote. It's not surprising that states have used lawful as a shorthand for compliance with state law, right, while our constitutional decision in Robinson used lawful as a shorthand for compliance with constitutional constraints. So, right, lawful arrest doesn't necessarily mean constitutional arrest. Yeah. Okay. Or seizure, rather. Go ahead. What do you understand the government's position to be as to when your client was arrested? If you look at pages 72 to 74 of the excerpts of record, the government's position in the district court was that my client was not arrested until after the police found the gun. The government's position on appeal, and obviously I expect my colleague will address you shortly, is that he was arrested, I think, immediately when the police pulled their weapons on him. So the parties have flipped positions on appeal, and I think that's because below, both parties were litigating this as a Terry stop, and that is no longer the relevant legal issue because now it's a search incident to arrest case. And as Your Honor probably noticed, we have cited cases like Stigold and Greenlaw in our reply brief for why the United States switching positions in the middle of litigation puts criminal defendants in an unfair position, even more so than defendants doing. But I hope that answered your question, Your Honor, and I hope I cut you some time on rebuttal. When you come back for planning purposes, we'll put two minutes on the clock. Thank you, Your Honor. I appreciate it. Thank you, Beth. We'll hear from the government, please. Good morning, Your Honors, and may it please the Court, Chair Maya Levine for the United States. Your Honors, there are three Supreme Court cases that determine the outcome here. That's the case. Could we start? I know it's a bit of a side issue, maybe, but it is concerning where opposing counsel left off. Has the government switched its position here? I'm so glad Your Honor asked because the simple answer is no. The government has not switched positions. Below, the government argued two things in the alternative. One, that there was a valid Terry stop and frisk, and second, that there was also probable cause for an arrest. At what point? At what point was there probable cause? As soon as law enforcement saw Mr. Estrella committing the crime of riding his bike on a sidewalk, Your Honor. Right at the outset of the police encounter, there was probable cause for an arrest. So to answer Judge Christian's question about the government's position, the government's position now is only one of those two alternative arguments. That is, the government is no longer advancing the argument that the initial guns out, shouting, handcuffed, sit down alone in the dark at night, the government's position now is that that was an arrest. The government is no longer advancing the position that that was merely a Terry stop. The government hasn't made any concession about it. The facts are still there, and the court can affirm on any basis it chooses, but the government, after the briefing and the court's reasoning, simply— Okay, so you've answered that question. I appreciate it. Yes, Your Honor. So that's your position now. Right from the outset, this person was under arrest. Yes, Your Honor. Okay, and then you started to say before I interrupted you that there are three Supreme Court cases you want us to look to? Yes, Your Honor. The first is ATWATER. ATWATER simply stands for the proposition that law enforcement can arrest for even a minor criminal offense without offending the Fourth Amendment. Right. The second is Virginia v. Moore, which Your Honor's already referenced, which stands for the proposition that the Fourth Amendment means the same thing everywhere. So if law enforcement arrests even for a citation-only offense, that does not offend the Fourth Amendment. And third is Rawlings v. Kentucky, which stands for the proposition that law enforcement can search incident to arrest and then arrest or search in whatever order is appropriate as long as that happens in a continuous series of events. And the defense is inviting the court to push back at least one of these Supreme Court precedents and to create a new exception in Fourth Amendment jurisprudence. So is it your position? Forgive me for interrupting, but it's your position, I think, if I can just connect the dots here from these three cases, that this arrest may have been unlawful. Maybe this wasn't an arrestable offense under state law, but that it doesn't violate the Constitution. Constitutionally speaking, that's still a Fourth Amendment arrest and then a lawful search. Exactly right, Your Honor. Such an important point. It doesn't matter whether this was legal or illegal under California state law. Virginia v. Moore makes perfectly clear that that is not part of the Fourth Amendment analysis, Your Honor. So the government would contend that this was legal under state law, but it really is beside the point. It really is a total sideshow. What matters, the courts in Virginia v. Moore said, state prohibitions don't affect the Fourth Amendment analysis, and this is a Fourth Amendment case. So the only way that the defense can invite the court to overturn the district court's finding is to create a new rule, and that rule would have to say something, and this is as narrowly as one could draw it. The rule would have to say something like, if law enforcement makes an arrest for a ticket-only offense and searches incident to that arrest, then the arrest has to happen before the search, and that would be new Fourth Amendment jurisprudence, and it would be bad Fourth Amendment jurisprudence, because it has to mean that the Fourth Amendment means different things in 50 different states based on what those state laws say. And also, it would create murkiness at the moment of arrest. So what opposing counsel is going to argue, though, is that ruling against her means that there would be a green light. Maybe it's a silly hypothetical, but maybe not, that it would be a green light for police officers to unlawfully arrest somebody under state law and then still take shelter for a subsequent search incident to an unlawful arrest. Yes, that is—yes, Your Honor, correct. That is the argument. It has also been the law for 22 years since Atwater versus— I guess to put a finer point on it, if I understand opposing counsel's argument correctly, is that the problem here and what distinguishes us from all these prior cases is that there was, under their view, no arrest, and we have to presume that the officers would have complied with the citation-only rule, and that under Knowles, if they had complied with— I mean, it's difficult, right? Because I think Knowles does suggest that, you know, when there's a decision to issue a citation only and not arrest, then the search is not okay. And I think here we're kind of threading a factual needle here, which maybe depends on whether we consider Mr. O'Shea to have been under arrest at the time that the search was being conducted. We don't get to apply Smith and Johnson and all the other cases saying the order of operation doesn't order in this narrow factual circumstance where there was no actual arrest, and we have to presume that the officers would be complying with state law. Yes, Your Honor. An important question, of course, Your Honor, and I think respectfully not a needle thread because there is a chasm dividing this from Knowles. The first sentence of Knowles says that Mr. Knowles got a citation. There is no search incident to arrest. Excuse me, there is no search incident to citation. Full stop. No citation in this case. Mr. O'Shea was arrested. And to your second part of your question, Your Honor, it doesn't matter whether Mr. O'Shea was arrested when law enforcement shouted at him in the dark by himself at night in a neighborhood where there had been a shooting that day and told him to sit on the ground, handcuffed at him, pointed a gun at him, and another officer jumped out and had his gun drawn at him. It doesn't matter whether that was an arrest or whether the arrest occurred four minutes later when Mr. O'Shea was put in the car as part of one continuous series of events. Mr. O'Shea was arrested. Unlike Knowles, there was no citation that relieved the danger that justifies a search incident to arrest. So that citation is a massive difference. Okay. Can you just accept for the premise of argument that it was a Terry stop, not an arrest, at the point at which they were searching and deal with your opposing counsel's arguments on that point? Yes, Your Honor. If the initial guns out encounter was merely a Terry stop and not arrest, what happened was a continuous series of events that landed approximately four minutes later with Mr. O'Shea in the back of a police car on his way to the station. That was an arrest. Now, Atwater, excuse me, and Rawlings v. Kentucky says that one can search and arrest in any manner that is in any order that law enforcement chooses as long as there is probable cause for an arrest and a factual arrest, and there was. Just a minute. But the timing of the arrest matters because the probable cause for the arrest has to exist before the arrest, right? Absolutely. In other words, the arrest can't give rise to the probable cause. Of course, Your Honor. So doesn't the timing of the arrest matter in this case? It only matters to the extent that, of course, the arrest had to happen after probable cause, and the probable cause arose at the very first instant of this encounter when law enforcement saw Mr. O'Shea riding his bike on the sidewalk. At that point, probable cause arose to what? To arrest him under Atwater. Law enforcement could arrest for even a minor criminal offense. I'm sorry, Your Honor. You're not answering, Judge. I don't think you're communicating. The probable cause to arrest him was for seeing him violate the ordinance regarding riding on the sidewalk. Exactly right, Your Honor. And that's cases that say it doesn't matter what state law says. Is that right? That is what the Supreme Court said in Virginia v. Moore, Your Honor. It doesn't matter what state law says. Well, it's still an unlawful arrest. What you said earlier in response to my question was an unlawful arrest. It's not an unconstitutional seizure. Exactly right. And last, Your Honors, I would just note, I would direct the court to Scallion, which is on all fours with these facts and is a case in which this court upheld the search on these precise facts. Anything further? I don't think there are any additional questions. Thank you for your argument. Thank you, Your Honor. We'll take this. Oh, no, we're not quite done. We have two more minutes on the clock for you. Forgive me. Judge Christin, I have not forgotten your question about Moore, but if I can just start where my colleague left off. Sure, wherever you want. I think the fundamental problem with my colleague's argument is that the fact of the actual arrest in the car, in the police car, does not distinguish this case from Knowles, because, of course, Mr. Knowles was actually arrested for the drugs they found in his car after everything that happened there, too. And there was probable cause to arrest Knowles for the car violation at the start there. And, in fact, The problem is in Knowles, they had actually issued the citation, right, which I understand the court to be saying signal the decision not to arrest for the offense for which they had probable cause. And that's the problem I see here, is that we don't have a clear indication that the officers had chosen to issue a citation instead of arrest. We don't know one way or the other. That's right, Your Honor. All we have is what you pointed out, which is I think that courts should not presume that the officers were going to violate the state law, but also, as I pointed out, the officer's declarations that he was arrested for the gun, which I think if it's the government's burden to point out that they do fall within a warrantless exception, they could have filed a declaration that said we were going to arrest him for the bike riding ordinance, and they did not. Right, but then we judge everything on an objective standard. That's right. But the best evidence of an objectively reasonable police officer is what these police officers would have done. I have a Fourth Circuit citation for that, which is United States v. Hill. You don't have a Ninth Circuit. I don't. I'm sorry, Your Honor. And if I just might quickly answer your Moore question. I'm sorry, Your Honor. So Moore does say, obviously, that the constitutional Fourth Amendment standard is not violated by an illegal state law arrest. But it doesn't say that that means that law enforcement officials are free to violate state law arrest statutes at will. No, certainly not. And so I think that's the answer, Your Honor, is that, of course, actual arrests that violate state law are not automatic Fourth Amendment violations. But that is not a sword that allows state law officials free reign to violate state law. No, and that's what circles back to your declarations, right? That's not what they're claiming they did here. Exactly. And, again, had they done so, as in Moore, fine, but in the absence of evidence that they really either did or planned to, I think that the court should presume that they would not have violated state law because they're law officers. So with that, we would ask the court to reverse. Thank you. And also, if the court would like a supplemental excerpt of record with the video, we'd be happy to submit one. We'll conference the case, and if we want one, we'll let you know. Thank you, Your Honor. We appreciate it. Thank you both very much for your very excellent briefing and arguments. It was very helpful. Thank you, Your Honors. We'll take that under advisement and move on to the next case on the calendar, please. It's JOA v. Garland.
judges: TASHIMA, CHRISTEN, SUNG